# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS
No. 13-687V
Filed: September 11, 2014
For Publication

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| DAVID BECKER, Parent of D.B., a Minor, | * | |
| | * | |
| Petitioner, | * | Interim attorneys' fees and costs decision; |
| | * | Respondent objects to interim fee award; |
| v. | * | Excessive Fees and Costs; Attorney's hourly |
| | * | rate; Paralegal's hourly rate |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Robert J. Krakow, New York, NY, for petitioner.
Ryan D. Pyles, Washington, DC, for respondent.

**MILLMAN, Special Master**

### DECISION AWARDING INTERIM ATTORNEYS' FEES[1]

Prior to the withdrawal of Patricia Finn, Esq. ("Ms. Finn") as attorney of record, petitioner filed a Motion for Interim Payment of Attorneys' Fees, requesting that the Court award petitioner $8,858.50 in interim attorneys' fees. Petitioner's new attorney of record, Robert Krakow, is currently seeking an expert report in support of petitioner's allegations. No decision on entitlement has been issued.

---

[1] Because this unpublished decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished decision on the United States Court of Federal Claims's website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

For the reasons set forth below, the undersigned awards petitioner $6,063.00 for interim attorneys' fees incurred up to and including February 18, 2014.

## PROCEDURAL HISTORY

On September 16, 2013, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10–34 (2006), alleging that his son, D.B., suffered a Table encephalopathy "and thereafter chronic encephalopathy which was 'caused in fact'" by the Hepatitis A, Varicella, and MMR vaccinations he received on September 17, 2010. Pet. at 1. On September 30, 2013 and January 17, 2014, petitioner filed medical records and a two-page affidavit. Petitioner also filed an amended petition on January 17, 2014.

The initial telephonic status conference was held on January 28, 2014, during which the undersigned explained the difficulty of petitioner prevailing on a theory that D.B. suffered a Table encephalopathy because, according to the medical records, his injury did not meet the timing and symptoms specified in the Vaccine Injury Table. 42 C.F.R. § 100.3 (2011). She further explained that petitioner would need to prove both causation in fact and that D.B. suffered more than six months of sequelae following a vaccine injury if he wished to proceed with the case. The undersigned ordered petitioner to file updated medical records.

On February 18, 2014, petitioner filed a Motion for Interim Payment of Attorneys' Fees, requesting that the Court award petitioner $8,858.50 in interim attorneys' fees for work done by Patricia Finn. Petitioner stated that he had retained new counsel in the case, and "it would create undue hardship" for Ms. Finn to wait until the case was completed to be paid for her services. Pet'r's Mot. at 1. Petitioner also stated that the claim was brought in good faith and upon reasonable basis because "the Court's ruling [that D.B. did not suffer a Table injury] did not deprive Petitioner with a good faith basis for their [sic] claim since the court permitted them [sic] to proceed with a cause in fact theory." Id. at 2. Petitioner submitted an invoice of fees incurred.

Petitioner filed a motion to substitute counsel on February 27, 2014. The motion was granted, and Robert Krakow was substituted as attorney of record.

Respondent filed her Response to Motion for Interim Payment of Attorneys' Fees on March 7, 2014, objecting to petitioner's motion on three bases: (1) petitioner has not established a reasonable basis for his claim or the manner in which Ms. Finn pleaded the claim; (2) an award of interim fees at this juncture is inappropriate; (3) the amount Ms. Finn seeks in fees is unreasonable. Respondent argues that the amount of fees requested is unreasonable because Ms. Finn's hourly rate and her paralegal's hourly rate are both excessive, and current counsel will be required to duplicate most of Ms. Finn's efforts.

Petitioner filed a reply on March 17, 2014. Petitioner argues that there is a reasonable basis to support his claim because medical records have been filed, which support an allegation that the vaccines caused in fact petitioner's injuries. He also argues that case law supports an award of interim fees. He argues that the amount of fees requested is justified by Ms. Finn's and her paralegal's experience in vaccine litigation.

2

This matter is now ripe for adjudication.

## DISCUSSION

### I.     Entitlement to Fees Under the Vaccine Act

Under the Vaccine Act, a special master or the Court of Federal Claims may award fees and costs for an unsuccessful petition if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa-15(e)(1) (2006); Cloer v. Sec'y of HHS, 133 S. Ct. 1886, 1893 (2013).

"Good faith" is a subjective standard. Hamrick v. Sec'y of HHS, No. 99-683V, 2007 WL 4793152 at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007). A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred. Turner v. Sec'y of HHS, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Petitioners are "entitled to a presumption of good faith." Grice v. Sec'y of HHS, 36 Fed. Cl. 114, 121 (Fed. Cl. 1996).

"Reasonable basis" is not defined in the Vaccine Act or Program rules. It has been determined to be an "objective consideration determined by the totality of the circumstances." McKellar v. Sec'y of HHS, 101 Fed. Cl. 297, 303 (Fed. Cl. 2011). In determining reasonable basis, the court looks "'not at the likelihood of success [of a claim] but more to the feasibility of the claim.'" Turner, 2007 WL 4410030, at *6 (citing Di Roma v. Sec'y of HHS, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). Factors to be considered include factual basis, medical support, jurisdictional issues, and the circumstances under which a petition is filed. Turner, 2007 WL 4410030, at *6–*9. Traditionally, special masters have been "quite generous" in finding reasonable basis. Turpin v. Sec'y of HHS, No. 99-564V, 2005 WL 1026714, at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005); see also Austin v. Sec'y of HHS, 10-362V, 2013 WL 659574, at *8 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) ("The policy behind the Vaccine Act's extraordinarily generous provisions authorizing attorney fees and costs in unsuccessful cases—ensuring that litigants have ready access to competent representation—militates in favor of a lenient approach to reasonable basis."). Special masters have found reasonable basis to file a claim absent medical records or opinions supporting vaccine causation. See Austin, 2013 WL 659574, at *8; Hamrick, 2007 WL 4793152.

### II.    Interim Fee Awards are Appropriate Under the Vaccine Act

The Federal Circuit ruled that interim fee awards are permissible under the Vaccine Act in Avera v. Secretary of Health and Human Services, 515 F.3d 1343, 1352 (Fed. Cir. 2008). The Federal Circuit again found interim fee awards appropriate under the Vaccine Act in Shaw v. Secretary of Health and Human Services, 609 F.3d 1372 (Fed. Cir. 2010). Subsequently, a number of judges and many special masters have found interim fee awards permissible under various circumstances. See, e.g., Woods v. Sec'y of HHS, 105 Fed. Cl. 148, 154 (Fed. Cl. 2012) (Judge Williams affirmed the special master's award of interim fees and suggested that when counsel withdraws, and it is unknowable how long case resolution might take, an interim award may be appropriate); Friedman v. Sec'y of HHS, 94 Fed. Cl. 323, 334 (Fed. Cl. 2010) (Judge Damich found that the statute permits interim fee awards and that the special master acted within

his discretion in choosing not to award interim fees); Doe/11 v. Sec'y of HHS, 89 Fed. Cl. 661, 668 (Fed. Cl. 2009) (Judge Williams reversed the special master's denial of interim fees); Bear v. Sec'y of HHS, No. 11-362V, 2013 WL 691963, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2013) (Special Master Hastings awarded interim fees over respondent's objection in a case where petitioner's counsel was going to withdraw, and the petition had been pending for more than 19 months); Lumsden v. Sec'y of HHS, No. 97-588, 2012 WL 1450520, at *6 (Fed. Cl. Spec. Mstr. Mar. 28, 2012) (Special Master Vowell awarded interim fees in an autism case over respondent's objection when petitioner's attorney was withdrawing from the case); Edmonds v. Sec'y of HHS, No. 04-87V, 2012 WL 1229149, at *13 (Fed. Cl. Spec. Mstr. Mar. 22, 2012) (Then-Chief Special Master Campbell-Smith awarded interim fees over respondent's objection in an autism case in which petitioner's counsel was about to withdraw); Dudash v. Sec'y of HHS, No. 09-646V, 2011 WL 1598836, at *6 (Fed. Cl. Spec. Mstr. Apr. 7, 2011) (Special Master Moran found an award of interim fees appropriate); Burgess v. Sec'y of HHS, No. 07-258V, 2011 WL 159760, at *2 (Fed. Cl. Spec. Mstr. Jan. 3, 2011) (Former Special Master Lord awarded interim attorneys' fees in a case where petitioners were soon to be represented by other counsel).

### III.    Interim Fees are Appropriate in This Case

In Avera, the Federal Circuit held that while interim fees are not banned by the statute, they were not appropriate in that case because appellants only sought interim fees pending appeal. 515 F.3d at 1352. The Federal Circuit stated, "Interim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." Id. In denying an interim fee award, the Federal Circuit reasoned, "The amount of fees here was not substantial; appellants had not employed any experts; and there was only a short delay in the award pending the appeal." Id.

In Shaw, the Federal Circuit clarified that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. The Court of Federal Claims and several special masters have found an interim fee award appropriate when petitioner's counsel withdraws from the case. See Woods, 105 Fed. Cl. at 154; Bear, 2013 WL 691963 at *5; Lumsden, 2012 WL 1450520 at *6; Edmonds, 2012 WL 1229149 at *13; Burgess, 2011 WL 159760 at *2.

### a.    Good Faith & Reasonable Basis

Petitioner is entitled to a presumption of good faith, and respondent does not contest that the petition was filed in good faith. There is no evidence that this petition was brought in bad faith; therefore, the undersigned finds that the good faith requirement is present.

In contrast, respondent does contest that this petition has a reasonable basis. Respondent asserts that petitioner has the burden to affirmatively demonstrate reasonable basis. McKellar, 101 Fed. Cl. at 305. She argues that Ms. Finn had no reasonable basis to plead a Table injury and even admitted herself in the initial status conference that she had miscalculated the timing of the onset of D.B.'s first seizure. Resp. at 4. Respondent further argues that the record only supports the fact that D.B. had a benign febrile seizure four days after his vaccination in the

context of pneumonitis, and that there is no evidence of any residual effects of that seizure.  Id.
Respondent further notes that the record is incomplete, given that medical records are still
outstanding.  Id.

　　Petitioner asserts that he has met this burden to demonstrate reasonable basis by filing
medical records.  Pet'r's Resp. at 3.  He states that there is still a plausible causation-in-fact case
even though it has been established that there was no Table injury.  Id. at 3–4.

　　Petitioner has filed medical records showing that D.B. received Hepatitis A, Varicella,
and MMR vaccinations on September 17, 2010, at around 9:30 a.m.  Med. recs. Ex. 2, at 4–5.
The medical records show that on September 21, 2010, at or around 1:37 p.m., approximately
100 hours after receiving MMR vaccine, D.B. had a febrile seizure in the context of 104-degree
fever.  Med. recs., Ex. 3, at 6–7.  He was diagnosed with pneumonitis.  Id. at 6.  Following the
seizure, D.B. had a speech defect for which he received private speech therapy.  Med. recs. Ex.
4, at 10.  D.B. visited the emergency room on June 22, 2012, a year and nine months after his
first seizure, for another reported seizure.  Med. recs. Ex. 5, at 7.  The medical records note that
he had a fever and viral illness and a past history of febrile seizures.  Id.  He visited the
emergency room for seizures again in September 2012 and February 2013.  Id. at 13, 23.

　　 D.B. did not suffer encephalopathy after MMR vaccine as defined in the Vaccine Injury
Table ("Table").  See 42 C.F.R. § 100.3 (2011).  Neither D.B.'s symptoms nor the timing of his
symptoms meet the Table definition.  The timing of D.B.'s febrile seizure does not fall within the
"5–15 days" onset outlined in the Table. 42 C.F.R. § 100.3(a)(III)(B).  Furthermore, the medical
records do not reflect that he had a "significantly decreased level of consciousness persist[ing]
beyond 24 hours" following his first febrile seizure on September 21, 2010.  42 C.F.R. §
100.3(b)(2)(i)(A).

　　However, even though Ms. Finn erroneously pleaded a Table injury in the petition, she
also pleaded a causation-in-fact theory, contrary to respondent's assertion.  The record is clear
that D.B. received vaccinations, suffered a seizure four days later, experienced speech delay after
his first seizure, and suffered subsequent seizures.  D.B.'s first seizure occurred in the context of
a fever and pneumonitis.  D.B.'s fever could have been caused by his pneumonitis or by either of
his vaccinations.  The Federal Circuit has ruled that a vaccination need not be the sole cause of a
vaccine injury—a petitioner may recover if the vaccine was a "substantial factor" in causing a
vaccine injury.  See Shyface v. Sec'y of HHS, 165 F.3d 1344 (Fed. Cir. 1999) (finding that DTP
vaccination was a "substantial factor" because the vaccine in conjunction with an E.coli infection
caused high fever and death).   Thus, the undersigned finds there was a reasonable basis to file
the petition even though the records show D.B.'s seizure occurred in context of a fever and
pneumonitis, since the vaccinations still may have been a substantial factor in causing the
seizure.

　　Moreover, the petition was filed five days prior to the expiration of the three-year statute
of limitations.  Claims filed near the expiration of the status of limitations have traditionally
received the most lenient treatment when analyzing reasonable basis.  See Austin, 2013 WL
659574, at *9. ("[S]pecial masters have recognized that the ability to investigate adequately a
claim is constrained by the need to file quickly to preserve the claim, and have found the balance

between these competing obligations favors filing."). <u>Id.</u>   Reasonable basis that exists in the early stages of a case, especially when a petition is filed quickly in order to comply with the statute of limitations, may be lost as more information is obtained.  <u>See id.</u>; <u>Hamrick</u>, 2007 WL 4793152, at *7.  Here, given the looming statute of limitations and the fact that petitioner's counsel withdrew in the early stages of the case, a lenient approach to assessing reasonable basis is appropriate.

Thus, the undersigned finds that the facts demonstrated in the medical records combined with the impending expiration of the statute of limitations gave Ms. Finn a reasonable basis for filing the petition and attempting to find an expert to support petitioner's allegations.  An award of reasonable attorneys' fees is merited.

### b.  Protracted Proceedings

Additionally, interim attorneys' fees are appropriate because waiting for the conclusion of the case would place an undue hardship on petitioner.  The petition has been pending for almost a year.  Petitioner's counsel, Mr. Krakow, is currently seeking an expert report, which is due October 15, 2014.  This case could conceivably proceed to hearing, in which case it might be months to years before a damages decision is issued.

Respondent contends that petitioner himself, as opposed to counsel, must incur undue hardship to justify the payment of interim fees.  However, as previously mentioned, many special masters have found that the withdrawal of counsel can constitute undue hardship.  <u>See</u> <u>Woods</u>, 105 Fed. Cl. at 154; <u>Bear</u>, 2013 WL 691963 at *5; <u>Lumsden</u>, 2012 WL 1450520 at *6; <u>Edmonds</u>, 2012 WL 1229149 at *13; <u>Burgess</u>, 2011 WL 159760 at *2.

The undersigned rejects respondent's objection to an award of interim fees and costs at this juncture and finds an award of interim fees appropriate.

## IV.   Reasonableness of Requested Interim Attorneys' Fees

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act.  <u>Avera</u>, 515 F.3d at 1347.  The lodestar approach involves a two-step process.  First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  <u>Id.</u> at 1347–48 (quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings.  <u>Id.</u> at 1348.

The lodestar approach requires that the reasonable hourly rate be multiplied by the number of hours "reasonably expended on the litigation."  <u>Avera</u>, 515 F.3d at 1347–48 (quotation and citation omitted).  Counsel must submit fee requests that include contemporaneous and specific billing entries indicating the task performed, the number of hours expended on the task, and who performed the task.  <u>See</u> <u>Savin v. Sec'y of HHS</u>, 85 Fed. Cl. 313, 316–18 (Fed. Cl. 2008).  Counsel must not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary."  <u>Saxton v. Sec'y of HHS</u>, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983)).  It is "well within the special

master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id. Furthermore, the special master may reduce hours <u>sua sponte</u>, apart from objections raised by respondent and without providing petitioner notice and opportunity to respond. <u>See</u> <u>Sabella v. Sec'y of HHS</u>, 86 Fed. Cl. 201, 208–09 (Fed. Cl. 2009).

Petitioner requests fees for Patricia Finn, Esq. of Piermont, New York. Petitioner filed an invoice dating from July 2013 through January 2014. This invoice includes fees billed for Ms. Finn and for Jessica Lucas Paradies, a paralegal. Petitioner seeks reimbursement for 14.3 hours of work completed by Ms. Finn, billed at a rate of $420 per hour, and 16.3 hours of work completed by Ms. Paradies, billed at a rate of $175 per hour.

### a. Patricia Finn's Hourly Rate

A reasonable hourly rate is "'the prevailing market rate,' defined as the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" <u>Avera</u>, 515 F.3d at 1348 (quoting <u>Blum</u>, 465 U.S. at 888). In <u>Avera</u>, the Federal Circuit found that in Vaccine Act cases, a court should use the forum rate, i.e., the District of Columbia rate, in determining an award of attorneys' fees. <u>Id.</u> at 1349. At the same time, the court adopted the <u>Davis County</u> exception to prevent windfalls to attorneys who work in less expensive legal markets. <u>Id.</u> (citing <u>Davis Cnty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency</u>, 169 F.3d 755, 758 (D.C. Cir. 1999)). In cases where the bulk of the work is completed outside the District of Columbia and there is a "*very significant* difference" between the forum hourly rate and the local hourly rate, the court should calculate an award based on local hourly rates. <u>Id.</u> (finding the market rate in Cheyenne, Wyoming to be very significantly lower than the market rate in Washington, DC). The <u>Davis County</u> exception does not apply when the forum rates are lower than an attorney's local rate. <u>Id.</u>; <u>Rodriguez v. Sec'y of HHS</u>, 2009 WL 2568468, at *19 (Fed. Cl. Spec. Mstr. July 27, 2009).

Petitioner submits that his counsel, Ms. Finn, should be compensated at hourly rates of $420 per hour. He submits this rate is appropriate because Ms. Finn practices in an affluent suburb of New York City and has ten years of experience practicing law, with eighty percent of her cases involving vaccine injury and vaccine exemption. Pet'r's Resp. at 5–6.

Respondent contends that Ms. Finn's experience does not merit a rate of $420 per hour. Respondent compares Ms. Finn to other attorneys with greater experience who were awarded forum rates in recent years. For example, John F. McHugh, who has more than forty years of legal experience and over ten years of Vaccine Program experience, was awarded $340 per hour for work done in 2010 and 2011. <u>Rodriguez v. Sec'y of HHS</u>, No. 06-559V, 2013 WL 1189451, at *17 (Fed. Cl. Spec. Mstr. Mar. 1, 2013); <u>Garcia v. Sec'y of HHS</u>, No. 07-286V, 2011 WL 6941702, at *7 (Fed. Cl. Spec. Mstr. Dec. 13, 2011). Respondent contends that due to her lesser experience, Ms. Finn should be paid significantly less than the $340 hourly rate awarded to Mr. McHugh.

Respondent also discusses other recent cases where special masters have awarded forum rates. In 2009, Special Master Moran stated the forum rate range for attorneys with more than ten years of experience was $250–$375 per hour. <u>Mastias v. Sec'y HHS</u>, No. 99-697V, 2009

WL 1838979, at *25 (Fed. Cl. Spec. Mstr. June 12, 2009), aff'd, 654 F.3d 1283 (Fed. Cir. 2011). In 2011, the undersigned found that a forum rate for attorneys in 2006–11 was between $275 and $360 per hour, and awarded an attorney with 13 years of experience and no previous Vaccine Program experience $256.00 to $293.00 for work done from 2005 to 2009.  Carcamo v. Sec'y of HHS, No. 07-483V, 2011 WL 2413345, at *5 (Fed. Cl. Spec. Mstr. May 20, 2011).

The undersigned finds that petitioner's counsel is entitled to the forum rate in Washington, DC, rather than the local geographic hourly rate in New York City or its suburbs. Avera, 515 F.3d at 1349.  In accordance with the Davis County exception, the local rate is applied when it is "very significantly lower" than the forum rate in order to prevent windfalls to attorneys.  Id.  Hourly rates in New York City and its suburbs are not "very significantly lower" than Washington, DC rates.  Rather, Ms. Finn is requesting a rate of $420 per hour, which is higher than or at least at the high end of the forum rate range.  The reasoning of the Davis County exception, to prevent windfalls to attorneys in markets where hourly rates are significantly lower than the forum rate, does not apply when the local rate is higher than the forum rate.  See Rodriguez v. Sec'y of HHS, No. 06-559V, 2009 WL 2568468, at *15 (Fed. Cl. Spec. Mstr. Jul. 27, 2009), aff'd, 91 Fed. Cl. 453 (Fed. Cl. 2010); aff'd, 632 F.3d 1381 (Fed. Cir. 2011) (finding Mr. McHugh, an attorney practicing in New York City, did not merit a "higher cost" exception to the forum rate and awarding him a forum rate of $310–335).  Thus, Ms. Finn merits a forum rate commensurate with her experience, reputation, and skill.

Two recent decisions have awarded Ms. Finn an hourly rate of $300–$310 per hour for work done between 2010 and 2014.  DiMatteo v. Sec'y of HHS, No. 10-566V, 2014 WL 1509320, at *6 (Fed. Cl. Spec. Mstr. March 27, 2014) (awarding $300 per hour for the period of 2010–12); Rowan v. Sec'y of HHS, No. 10-272V, 2014 WL 3375588, at *3 (Fed. Cl. Spec. Mstr. June 19, 2014) (awarding $300 per hour for 2010–11 and $310 per hour for 2012–14).  While these decisions are not binding on the undersigned, their reasoning is persuasive. This rate is comparable to the forum rates the undersigned found in 2011. Carcamo, 2011 WL 2413345.

After reviewing Ms. Finn's years of experience, reputation, and skill, and comparing this with other attorneys with comparable factors, the undersigned finds that an hourly rate of $310 for 2013 to 2014 is reasonable.

### b.  Jessica Lucas's Hourly Paralegal Rate

Petitioner seeks an hourly rate of $175 for work performed by Jessica Lucas Paradies. Respondent contends this rate is unsubstantiated and too high for what appears to be paralegal tasks.  Resp. at 12.  Respondent cites Garcia, 2011 WL 6941702, at *12, in which the petitioner was awarded a paralegal rate of $95 for work completed in lower Manhattan.  Respondent states that while Ms. Paradies has a *juris doctor*, the record does not indicated that she is licensed to practice law in any state.  Resp. at 12.  Petitioner states that a rate of $175 is justified based on Ms. Paradies' J.D. and her five years of experience in vaccine injury litigation. Pet'r's Resp. at 6.

A review of the invoice shows that Ms. Paradies performed tasks consistent with standard paralegal duties (requesting and reviewing medical records, communicating with the client, and drafting affidavits).  The undersigned and other special masters in the Vaccine Program have

determined that paralegal rates of up to $125 per hour are reasonable forum rates.  See Yang v. Sec'y of HHS, No. 10-33V, 2013 WL 4875120, at *4 (Fed. Cl. Spec. Mstr. Aug. 22, 2013); Brown v. Sec'y of HHS, No. 09-426V, 2012 WL 952268, at *3 (Fed. Cl. Spec. Mstr. Feb. 29, 2012); Broekelschen v. Sec'y of HHS, No. 07-137V, 2011 WL 2531199, at *3 (Fed. Cl. Spec. Mstr. June 3, 2011), aff'd, 102 Fed. Cl. 719, 723 (Fed. Cl. 2011).  Two special masters recently found an hourly rate of $100 to $110 for Ms. Paradies to be reasonable.  Dimatteo, 2014 WL 1509320, at *6 (awarding Ms. Paradies $110 per hour for 2010–13); Rowan, 2014 WL 3375588, at *4 (awarding Ms. Paradies $100 per hour for 2012–14).

After reviewing Ms. Paradies' experience and comparing this with other paralegal rates, the undersigned finds that an hourly rate of $100 for 2013 to 2014 is reasonable.

### c.  Reasonable Hours Expended

Respondent argues that the hours expended in this case are unreasonable since "new counsel will be required to duplicate most of previous counsel's efforts . . . [b]ecause previous efforts have not advanced this case substantively before the Court."  Resp. at 12.

Ms. Paradies spent 16.3 hours on the case, primarily communicating with petitioner and obtaining and reviewing medical records.  Ms. Finn spent 14.3 hours communicating with petitioner, drafting the petition, and preparing for and participating in the initial status conference.  During the time Ms. Finn acted as petitioner's counsel, she filed the petition, seven exhibits of medical records, petitioner's affidavit, and an amended petition.  The parties and the court will continue to use the previously filed medical records, affidavit, and amended petition as new counsel represents petitioner.  Additionally, the time Ms. Finn spent during the initial status conference was not wasted, as the undersigned memorialized the conference with an Order that can be of use to new counsel as he proceeds with this case.  Accordingly, the previous efforts of counsel are not redundant as respondent suggests.  Based on her experience in the Program, the undersigned finds the number of hours expended by Ms. Finn and Ms. Paradies to be reasonable.

### CONCLUSION

The undersigned finds an award of interim fees appropriate.  In sum, undersigned awards to petitioner the following amount for attorneys' fees:

**Attorney's fees for Patricia Finn:**
| | |
|---|---|
| Requested: | 14.3 hours at $420 per hour = $6,006.00 |
| Awarded: | 14.3 hours at $310 per hour = **$4,433.00** |

**Paralegal fees for Jessica Lucas:**
| | |
|---|---|
| Requested: | 16.3 hours at $175 per hour = $2,852.50 |
| Awarded: | 16.3 hours at $100 per hour = **$1,630.00** |

**Total fees:**
| | |
|---|---|
| Requested: | $8,858.50 |
| Awarded: | **$6,063.00** |

The undersigned finds this amount to be reasonable and awards **$6,063.00**, representing reimbursement for interim attorneys' fees and costs.  The award shall be in the form of a check made payable jointly to petitioner and Patricia Finn, Esq. in the amount of **$6,063.00**.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[2]

**IT IS SO ORDERED.**

Dated: <u>September 11, 2014</u>                                    <u>s/ Laura D. Millman</u>
                                                                                            Laura D. Millman
                                                                                            Special Master

---

[2] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.